| Fill in this information to identify the case: |
|---|
| United States Bankruptcy Court for the: |
| District of Columbia |
| Case number (*If known*): _____  Chapter __11__ |

☐ Check if this is an amended filing

Official Form 105
# Involuntary Petition Against an Individual

12/15

Use this form to begin a bankruptcy case against an individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against a non-individual, use the *Involuntary Petition Against a Non-individual* (Official Form 205). Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write name and case number (if known).

### Part 1: Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

**1. Chapter of the Bankruptcy Code**

*Check one:*
☐ Chapter 7
☑ Chapter 11

### Part 2: Identify the Debtor

**2. Debtor's full name**

Roger
First name

Harvey
Middle name

Black
Last name

_____
Suffix (Sr., Jr., II, III)

**3. Other names you know the debtor has used in the last 8 years**

Include any assumed, married, maiden, or trade names, or *doing business as* names.

**4. Only the last 4 digits of debtor's Social Security Number or federal Individual Taxpayer Identification Number (ITIN)**

☑ Unknown

xxx – xx – ____  ____  ____  ____    OR    9 xx – xx – ____  ____  ____  ____

**5. Any Employer Identification Numbers (EINs) used in the last 8 years**

☑ Unknown

___ ___ – ___ ___ ___ ___ ___ ___ ___
EIN

___ ___ – ___ ___ ___ ___ ___ ___ ___
EIN

Debtor  Black, Roger H.  Case number *(if known)*_____

| | | |
|---|---|---|
| **6. Debtor's address** | **Principal residence** | **Mailing address, if different from residence** |

190 Wickman Way Rd.
Number    Street

Chester                    MD    21619
City                       State  ZIP Code

County

**Principal place of business**

Number    Street

City                       State  ZIP Code

County

**7. Type of business**

☐ Debtor does not operate a business

*Check one if the debtor operates a business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☒ None of the above

**8. Type of debt**

**Each petitioner believes:**

☐ **Debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☒ **Debts are primarily business debts.** *Business debts* are debts that were incurred to obtain money for a business or investment or through the operation of the business or investment.

**9. Do you know of any bankruptcy cases pending by or against any partner, spouse, or affiliate of this debtor?**

☒ No
☐ Yes. Debtor _____ Relationship _____
District _____ Date filed _____ Case number, if known _____
MM / DD / YYYY

Debtor _____ Relationship _____
District _____ Date filed _____ Case number, if known _____
MM / DD / YYYY

Official Form 105    Involuntary Petition Against an Individual    page **2**

Debtor  Black, Roger H.    Case number *(if known)*_____

## Part 3: Report About the Case

**10. Venue**

Reason for filing in this court.

*Check one:*

☑ Over the last 180 days before the filing of this bankruptcy, the debtor has resided, had the principal place of business, or had principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

☐ Other reason. Explain. (See 28 U.S.C. § 1408.) _____

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked*:

☑ The debtor is generally not paying such debtor's debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☐ No

☑ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Welch Family Limited Partnership Five | Guaranty of Business Loan | $ 4,000,000.00 |
| Welch Family Limited Partnership Sixteen | Guaranty of Business Loan | $ 1,300,000.00 |
| Welch Family Limited Partnership Seventeen | Guaranty of Business Loan | $ 1,300,000.00 |
| | Total | $ 6,300,000.00 |

**If more than 3 petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's (or representative's) signature under the statement, along with the signature of the petitioner's attorney, and the information on the petitioning creditor, the petitioner's claim, the petitioner's representative, and the attorney following the format on this form.**

Debtor  **Black, Roger H.**        Case number *(if known)* _____

## Part 4: Request for Relief

Petitioners request that an order for relief be entered against the debtor under the chapter specified in Part 1 of this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioners declare under penalty of perjury that the information provided in this petition is true and correct. Petitioners understand that if they make a false statement, they could be fined up to $250,000 or imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152 and 3571. If relief is not ordered, the court may award attorneys' fees, costs, damages, and punitive damages. 11 U.S.C. § 303(i).

**Petitioners or Petitioners' Representative**

✘ **/s/ Kenneth J. Welch**
Signature of petitioner or representative, including representative's title

**Welch Family Limited Partnership Five**
Printed name of petitioner

Date signed **07/07/2025**
MM / DD / YYYY

**Mailing address of petitioner**

**910 M St. NW, #1130**
Number   Street

**Washington**   **DC**   **20001**
City   State   ZIP Code

**If petitioner is an individual and is not represented by an attorney:**
Contact phone _____
Email _____

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number   Street

_____
City   State   ZIP Code

**Attorneys**

✘ **/s/ Jeffery T. Martin, Jr.**
Signature of attorney

**Jeffery T. Martin, Jr., Bar No. VA71860**
Printed name

**Martin Law Group, P.C.**
Firm name, if any

**8065 Leesburg Pike, Suite 750**
Number   Street

**Vienna**   **VA**   **22182**
City   State   ZIP Code

Date signed **07/07/2025**
MM / DD / YYYY

Contact phone **703-223-1822**   Email **jeff@martinlawgroup.co**

Official Form 105     Involuntary Petition Against an Individual     page **4**

Debtor **Black, Roger H.**                               Case number *(if known)*_____

---

✖ **/s/ Kenneth J. Welch**
Signature of petitioner or representative, including representative's title

**Welch Family Limited Partnership Sixteen**
Printed name of petitioner

Date signed  07/06/2025
            MM / DD / YYYY

**Mailing address of petitioner**

910 M St. NW, #1130
Number   Street

Washington              DC       20001
City                    State    ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number   Street

_____
City     State ZIP Code

---

✖ **/s/ Jeffery T. Martin, Jr.**
Signature of Attorney

Jeffery T. Martin, Jr., Bar No. VA71860
Printed name

Martin Law Group, P.C.
Firm name, if any

8065 Leesburg Pike, Suite 750
Number   Street

Vienna                  VA       22182
City                    State    ZIP Code

Date signed  07/07/2025
            MM / DD / YYYY

Contact phone 703-223-1822    Email jeff@martinlawgroup.co

---

✖ **/s/ Kenneth J. Welch**
Signature of petitioner or representative, including representative's title

**Welch Family Limited Partnership Seventeen**
Printed name of petitioner

Date signed  07/06/2025
            MM / DD / YYYY

**Mailing address of petitioner**

910 M St. NW, #1130
Number   Street

Washington              DC       20001
City                    State    ZIP Code

**Name and mailing address of petitioner's representative, if any**

_____
Name

_____
Number   Street

_____
City     State    ZIP Code

---

✖ **/s/ Jeffery T. Martin, Jr.**
Signature of Attorney

Jeffery T. Martin, Jr., Bar No. VA71860
Printed name

Martin Law Group, P.C.
Firm name, if any

8065 Leesburg Pike, Suite 750
Number   Street

Vienna                  VA       22182
City                    State    ZIP Code

Date signed  07/07/2025
            MM / DD / YYYY

Contact phone 703-223-1822    Email jeff@martinlawgroup.co

---

Official Form 105                Involuntary Petition Against an Individual                page **5**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

In Re:

ROGER HARVEY BLACK,

Debtor.

Bankruptcy Case No.: _____

Chapter 11

## BANKRUPTCY RULE 1003 STATEMENT

Kenneth J. Welch, General Partner of Welch Family Limited Partnership Sixteen ("WFLP16") and Welch Family Limited Partnership Seventeen ("WFLP17"), Petitioning Creditors, makes the following statement pursuant to Bankruptcy Rule 1003:

1. On or about December 31, 2024, WFLP16 and WFLP17 purchased the following loans from Mainstreet Bank:

   a. A loan evidenced by a Deed of Trust Note ($1,302,480 note) owed by Woodcrest Condominiums V LLC, Woodcrest Condominiums VII LLC, and Woodcrest Condominiums X LLC (collectively, the "Woodcrest Borrowers"), and

   b. A loan evidenced by a Deed of Trust Note ($5,365,000 note) owed by the Woodcrest Borrowers.

2. These loans were purchased from Mainstreet Bank for approximately $2,463,000.00 in an arm's length transaction. Both loans are guaranteed by Roger Black, the debtor in this case. Confessed judgments have been entered against Roger Black based on defaults under the guaranty agreements.

3. I affirm that the claims were not acquired for the purpose of commencing this case and that the Loan Sale Agreement evidencing the transfer is attached hereto.

/s/ Kenneth J. Welch
Kenneth J. Welch, General Partner of Welch Family Limited Partnership Sixteen and Welch Family Limited Partnership Seventeen

## LOAN SALE AGREEMENT

THIS LOAN SALE AGREEMENT ("**Agreement**") is made and entered into as of the 25 day of November 2024, by and between the following (each a "**Party**" and, collectively, the "**Parties**"): MainStreet Bank (the "**Seller**"); and Welch Family Limited Partnership Sixteen (the "**Buyer**").

### RECITALS

R-1. The Seller is the owner and holder of the loan documents identified on **Exhibit A** hereto (collectively, the "**Loan Documents**") evidencing loans in the original principal amounts of Five Million Three Hundred Sixty-Five Thousand Dollars ($5,365,000.00) and One Million Three Hundred Two Thousand Four Hundred Eighty Dollars ($1,302,480.00) (collectively, the "**Loans**") to Woodcrest Condominiums V LLC, Woodcrest Condominiums VII LLC and Woodcrest Condominiums X LLC (collectively, the "**Borrowers**") and guaranteed by Roger Black and Blaco, LLC (collectively, the "**Guarantors**"). The Borrowers and the Guarantors are collectively referred to herein as the "**Obligors**." The Loans are evidenced by, among other things, various Deed of Trust, Notes in the aforementioned principal amounts, as modified, from the Borrowers to the order of the Seller (collectively, the "**Notes**").

R-2. The Seller is the holder of judgments against the Obligors dated on or about June 28, 2024, in the Circuit Court of Fairfax County, Virginia as Case Nos. CL-2024-0009154, CL-2024-0009152 and CL-2024-0009156. The judgments against the Guarantors referenced in the preceding sentence were recorded as judgments in the Circuit Court for Queen Anne's County, Maryland as Case Nos. C-17-JG-24-000243 and C-17-JG-24-000242. The judgments referenced in the preceding two sentences are collectively referred to herein as the "**Judgments**."

R-3. The Seller has agreed to sell, and the Buyer has agreed to purchase the Loans, the Loan Documents, the Judgments and all documents in connection with same in accordance with the terms and conditions of this Agreement.

### WITNESSETH

NOW, THEREFORE, in consideration of the mutual promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1. **Purchase and Sale of Loans, Loan Documents and Judgments.** The Seller shall sell, and the Buyer shall purchase, the Loans, the Loan Documents, and the Judgments on or before the Closing Date (as hereinafter defined) for a sum equal to Two Million Two Hundred Seventy-Five Thousand Dollars ($2,275,000.00) (the "**Purchase Price**").

2. **Delivery Date.** The Buyer shall fully execute this Agreement and deliver same to the Seller on or before November 22, 2024 ("**Delivery Date**"). Along with the executed Agreement, the Buyer shall also deliver to the Seller on the Delivery Date a deposit totaling Fifty

Thousand Dollars ($50,000.00) ("**Deposit**") which will be effectuated by the Seller placing a Fifty Thousand Dollar ($50,000.00) hold on an account in the name of Ken Welch or his affiliated entities with the Seller.

This Agreement shall be deemed null and void in the event that by the Delivery Date the fully executed Agreement and/or the Deposit are not delivered to the Seller.

3. **Due Diligence.** The Buyer shall have through and until November 29, 2024 to conduct its due diligence with respect to the sale of the Notes.

The Deposit shall be returned to the Buyer in the event that the Buyer notifies the Seller on or before November 29, 2024, in writing, of its intention not to proceed with the purchase of the Notes pursuant to this Agreement

4. **Closing.** The closing of the sale of the Loans, the Loan Documents and the Judgments shall take place on or before December 5, 2024 (the "**Closing Date**"). On the Closing Date: (a) the Buyer shall deliver the Purchase Price to the Seller by wire transfer in accordance with the wiring instructions attached hereto as **Exhibit B**; and (b) the Seller shall execute and deliver to the Buyer the documents and instruments required to be delivered under Section 9 of this Agreement.

5. **Transfer of Loans, the Loan Documents and the Judgments to Buyer.** The Seller, upon delivery of the Purchase Price, shall be deemed to have sold, assigned, transferred and conveyed to the Buyer, without recourse, representation or warranty of any kind other than the representations and warranties provided by the Seller in Section 7 of this Agreement, all of the Seller's right, title, and interest in and to the Loans, the Loan Documents and the Judgments. If, however, the Purchase Price is not delivered to the Seller on or before the Closing Date, and/or there is any other default under this Agreement, then the Seller's agreement to sell, assign, transfer and convey the Loans, the Loan Documents and the Judgments to the Buyer pursuant to this Agreement shall be null, void and of no further force and effect.

6. **No Recourse, Representations or Warranties.** The Buyer acknowledges and agrees that, except as provided for in Section 7 of this Agreement, the Seller is selling the Loans, the Loan Documents and the Judgments to the Buyer in an "AS IS" condition, without recourse, representations or warranties of any kind whatsoever, express or implied, including but not limited to those relating to: (a) the enforceability of the Loan Documents and the Judgments; (b) the creditworthiness of the Obligors; (c) the collectability of the indebtedness owed under the Loan Documents and the Judgments; (d) the assets of the Obligors; (e) the existence, nature or value of any collateral for the Loans; or (f) the existence, validity or priority of any liens securing the Loans.

7. **Representations and Warranties of Seller.** Notwithstanding Section 6 above, the Seller represents and warrants as follows:

(a) **Authorization and Validity.** The execution and delivery of this Agreement by the Seller, and the performance of the Seller's obligations hereunder, have been duly authorized, and this Agreement constitutes the valid, binding and enforceable obligation of the Seller.

(b) <u>Ownership of Loans, the Loan Documents and the Judgments</u>. The Seller is the sole owner and holder of the Loans, the Loan Documents, and the Judgments, free and clear of all liens and encumbrances.

(c) <u>No Previous Sale</u>. The Seller has not previously sold, assigned, transferred or conveyed its interest in the Loans, the Loan Documents and the Judgments to any party.

(d) <u>Judgment Balances</u>. As of October 31, 2024 the outstanding balance owed from the Borrowers with respect the $5,365,000.00 Note under the Judgments entered in Fairfax County Virginia total approximately One Million Six Hundred Sixty-Five Thousand Seven Hundred Sixty-Two Dollars and Nine Cents ($1,665,762.09). As of October 31, 2024 the outstanding balance owed from the Borrowers with respect the $1,302,480.00 Note under the Judgments entered in Fairfax County Virginia total approximately One Million Five Hundred Eight Thousand Seven Hundred Three Dollars and Ninety-Eight Cents ($1,508,703.98). As of October 31, 2024 the outstanding balance owed from the Guarantors with respect their guaranty of the Notes under the Judgments entered in Fairfax County Virginia total approximately Three Million Forty-Two Thousand One Hundred Forty-Nine Dollars and Forty-Nine Cents ($3,042,149.49).

The Seller paid delinquent real estate taxes totaling Sixty-Six Thousand Six Hundred Fifty-One Dollars and Ninety-Eight Cents ($66,651.98) on or about June 24, 2024, with respect to the real estate pledged as collateral for the Loans.

8. **Representations and Warranties of Buyer.** The Buyer represents and warrants to the Seller that:

(a) <u>Authorization and Validity</u>. The execution and delivery of this Agreement by the Buyer, and the performance of the Buyer's obligations hereunder, have been duly authorized, and this Agreement constitutes the valid, binding, and enforceable obligation of the Buyer.

(b) <u>Independent Investigation and Decision to Purchase</u>. Prior to execution of this Agreement, the Buyer has examined copies of the Loan Documents and has conducted its own independent investigation and due diligence regarding the Loans, the Loan Documents and the Judgments. The Buyer possesses the requisite business knowledge and experience to evaluate the potential benefits and risks of entering into this Agreement and has exercised its own independent judgment in deciding to enter into this Agreement.

9. **Delivery of Documents and Instruments.** On the Closing Date, after delivery to the Seller of the Purchase Price, the Seller shall deliver the following to the Buyer:

(a) Each of the original Loan Documents (or, if the original of any of the Loan Documents is not available, a true and complete copy);

(b) Assignments of the Judgments, in form satisfactory to the Buyer by which

the Seller shall sell, assign, transfer and convey to the Buyer, without recourse, representation or warranty of any kind, except as set forth in Section 7 of this Agreement, all of the Seller's right, title, and interest in and to the Judgments;

(c) Assignment of the deed of trust securing each of the Notes in the form attached hereto as **Exhibit "C"**; and

(d) Allonge Endorsements to the Notes in the form attached hereto as **Exhibit "D."**

10. **Financing.** In the event that the Seller decides, in its sole and absolute discretion, not to provide financing to the Buyer for its purchase of the Loans and the Loan Documents pursuant to this Agreement, or in the event that the Buyer does not accept the financing offered by the Seller, the Parties understand that the Buyer will not be obligated to close on its purchase of the Loans and the Loan Documents pursuant to this Agreement and the Deposit shall then be returned to the Buyer.

Nothing contained in this Agreement shall be deemed a commitment by the Seller to provide any financing to the Buyer for its purchase of the Loans and the Loan Documents pursuant to this Agreement.

11. **Authorization to File Assignments.** On the Closing Date, after delivery to the Seller of the Purchase Price, the Seller shall be deemed to have authorized the Buyer, at the Buyer's expense, to file or record the assignments delivered to the Buyer under this Agreement in any court or other recording office. The Buyer shall be solely responsible for filing or recording the assignments and for paying any filing or recording fees or other costs associated with the filing or recording of the assignments.

12. **Assumption of Obligations.** On the Closing Date, after delivery to the Buyer of the documents and instruments required to be delivered under Section 9 of this Agreement, the Buyer shall be deemed to have assumed any obligations which the Seller may have had under or in connection with the Loans, the Loan Documents and the Judgments.

13. **Further Assurances.** The Parties shall promptly take such actions and execute such documents, at no cost or expense to the Seller, which may be reasonably necessary in order to effectuate and consummate the terms of this Agreement. This provision shall survive closing.

14. **Costs and Expenses.** The Buyer shall pay all costs, expenses, fees, charges and taxes, if applicable, associated with the transfer of the Loans, the Loan Documents and the Judgments.

15. **Confidentiality.** The terms of this Agreement are confidential. No Party shall disclose the terms of this Agreement to any third party without the prior written approval of the other Party, except for the following purposes: (a) the Parties may disclose the terms of this Agreement to their attorneys, accountants, auditors and/or other advisors; (b) the Buyer's direct and indirect members may disclose the terms of this Agreement to their lenders, attorneys, accountants,

auditors and/or other advisors; (c) the Parties may disclose the terms of this Agreement in response to a court order, subpoena or other legal process requiring such disclosure; and (d) the Parties may disclose the terms of this Agreement in connection with an action to enforce any of the provisions of this Agreement.

16.     **Notice.** Any notice required or permitted by or in connection with this Agreement shall be in writing and shall be made by hand delivery or by overnight delivery service at the appropriate addresses set forth below or to such other address as may be hereafter specified by written notice. Notice shall be considered given as of the date of the hand delivery or one (1) business day after delivery by overnight delivery service, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish the fact that notice was given as provided herein.

If to the Seller:

MainStreet Bank
10089 Fairfax Boulevard
Fairfax, Virginia
Attn: Thomas Floyd, Executive Vice President

If to the Buyer:

Welch Family Limited Partnership Sixteen
c/o Ken Welch
910 M Street NW #1130
Washington DC 20001

and Buyer's Counsel:

Kitsune Lyon PLC
1007 N. Federal Highway, Suite 2005
Fort Lauderdale, FL 33304

17.     **Waiver of Jury Trial.** The Parties agree that any action, suit or other proceeding instituted by any Party or any successor or assign of any Party shall be tried only by a court and not by a jury if such action, suit or other proceeding arises out of or in any manner relates to all or any of the following: (a) the sale of the Loans, the Loan Documents and the Judgments; (b) this Agreement; (c) any documents prepared in connection with or executed in connection with, this Agreement; or (d) any of the actions taken pursuant to the terms of this Agreement. **Each Party expressly waives any right to a jury trial in any such action, suit or other proceeding.** This provision is a specific and material aspect of this Agreement.

18.     **General Provisions.**

    (a)     **Headings.** The headings and subheadings in this Agreement are intended

for convenience only and shall not be used or deemed to limit or diminish any of the provisions hereof.

(b) **Construction.** Unless the context requires otherwise, singular nouns and pronouns used in this Agreement shall be deemed to include the plural, and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender.

(c) **Interpretation.** The Parties acknowledge that each of them has participated in the negotiation and drafting of this Agreement, and no provision of this Agreement shall be construed against or interpreted to the disadvantage of any Party by any court, tribunal or other authority by reason of such party having or being deemed to have structured, dictated or drafted such provision.

(d) **Successors and Assigns.** Each of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns. Whenever in this Agreement any of the Parties is referred to, such reference shall be deemed to include the successors and assigns of such Party.

(e) **No Third-Party Beneficiaries.** This Agreement is not intended to create any rights in any person or entity not a Party hereto.

(f) **Modification.** No modification of any provision of this Agreement shall be effective unless the same is in writing and signed by all of the Parties, and then such modification shall be effective only in the specific instance or for the purpose for which given.

(g) **Severability.** If any term, provision or condition of this Agreement, or any part thereof, shall for any reason be found or held to be invalid or unenforceable by any court, tribunal or other authority, such invalidity or unenforceability shall not affect the remainder of such term, provision or condition or any other term, provision or condition, and this Agreement shall survive and be construed as if such invalid or unenforceable term, provision or condition had not been contained therein.

(h) **Integration.** This Agreement contains the entire agreement of the Parties with respect to all matters covered by this Agreement, and no other agreement, statement, representation or promise made by any Party, or any employee, officer, attorney, agent or other representative of any Party, shall be valid or binding.

(i) **Applicable Law; Consent to Jurisdiction.** The performance, construction and enforcement of this Agreement shall be governed by the laws of the Commonwealth of Virginia. The Parties consent to the jurisdiction and venue of the courts of the Commonwealth of Virginia, or the United States District Court for the Eastern District of Virginia, in any action or proceeding instituted on, under or in connection with this Agreement.

(j) **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same Agreement. Delivery of an executed counterpart of this Agreement by electronic

transmission (including but not limited to delivery of a PDF copy of an executed counterpart transmitted by email) shall be equally as effective as delivery of an original executed counterpart of this Agreement. A photocopy of this Agreement executed by the Parties shall constitute sufficient evidence of the executed original of this Agreement for all purposes.

IN WITNESS WHEREOF, the Parties have executed or caused to be executed this Agreement under seal effective on the date first above written.

Witness: _____

**SELLER:**

MainStreet Bank

By: _____ (SEAL)
Name: Thomas M. Floyd
Title: Executive Vice President

Witness: _____

**BUYER:**

Welch Family Limited Partnership Sixteen

By: _____ (SEAL)
Name: Ken Welch
Title: General Partner

13075.007:237660

**EXHIBIT A**

**(Schedule of Loan Documents)**

1. Deed of Trust Note in the original principal amount of $5,365,000.00 dated March 9, 2020, as modified by Loan Modification Agreements dated April 29, 2022, November 26, 2022, December 7, 2022 and January 19, 2024

2. Deed of Trust Note in the original principal amount of $1,302,480.00 dated March 9, 2020, as modified by Loan Modification Agreements dated April 29, 2022, November 26, 2022, December 7, 2022 and January 19, 2024

3. Guaranty Agreement dated March 9, 2020

4. Deed of Trust and Security Agreement dated March 9, 2020

5. Loan Agreement dated March 9, 2020

6. All other documents in connection with the Loans