The order below is hereby signed.

Signed: May 1 2026



/s/ Elizabeth L. Gunn
Elizabeth L. Gunn
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:** | **Case No. 25-00260-ELG** |
| **Roger Harvey Black,** **Alleged Debtor.** | **Chapter 11** |

### ORDER DENYING CROSS MOTIONS FOR RECONSIDERATION

On January 14, 2026, the Court held a hearing (the "Reconsideration Hearing") on (1) the *Second Motion for Reconsideration* (the "Welch Motion") (ECF No. 88) filed by Welch Family Limited Partnership Five[1] ("Welch Five"), Welch Family Limited Partnership Sixteen ("Welch Sixteen"), and Welch Family Limited Partnership Seventeen ("Welch Seventeen") (collectively, the "Petitioning Creditors") and responses thereto; and (2) the *Motion for Amendment of December 23, 2025, Order Dismissing Involuntary Petition and Reserving Jurisdiction & to Consider Issues Raised Pursuant to 11 U.S.C. § 303(i) and § 362(k)* (the "Black Motion") (ECF No. 90) filed by Roger Harvey Black (the "Alleged Debtor") and responses thereto. The Welch Motion asks the Court to reconsider, under Bankruptcy Rule 9023, the *Order Dismissing Involuntary Petition and Reserving Jurisdiction to Consider Issues Raised Pursuant to 11 U.S.C. § 303(i) and § 362(k)* (the "Dismissal Order") (ECF No. 87) and the underlying oral ruling on

---

[1] Despite Welch Five's inclusion, the Welch Motion does not challenge the Court's finding that Welch Five is not a valid petitioning creditor because its claim is subject to a bona fide dispute.

December 17, 2025. The Black Motion, on the other hand, asks the Court to alter or amend portions of the Dismissal Order.[2]

The Welch Motion primarily asks the Court to reconsider its finding that the post-petition garnishment actions taken by Welch Sixteen and Welch Seventeen constituted a voidable post-petition transfer under § 549, making both Welch Sixteen and Welch Seventeen ineligible petitioning creditors under § 303(b)(2). The Black Motion asks for reconsideration of the Court's determination of the number of creditors who qualified as holders of eligible claims under § 303(b)—asserting that the number should be greater than or equal to 12. For the reasons stated herein, the Court finds that the Welch Motion is denied. Further, based on the Court's findings regarding the Welch Motion, the Black Motion is denied as moot.

## I.    Facts

The *Involuntary Petition* (ECF No. 1), filed on July 7, 2025 (the "Petition Date"), is just one matter in a continuing saga of litigation between the Petitioning Creditors and the Alleged Debtor. On September 30, 2025 (the "Initial Trial Date"), the Court held an initial evidentiary hearing on the question of whether to enter an order for relief in the Alleged Debtor's involuntary case. At the end of the hearing on the Initial Trial Date, ruling from the bench, the Court held that (1) Welch Five is not a valid petitioning creditor because its claim is subject to a bona fide dispute and (2) Welch Sixteen and Welch Seventeen represent the holder of a single eligible claim because the debt originates from the purchase and assignment of one prior debt. Because there appeared to be 12 or more eligible creditors and the only remaining petitioning creditor was Welch Sixteen and Welch Seventeen (as one creditor), the Court dismissed the involuntary petition for lack of sufficient petitioning creditors. On October 1, 2025, the Court

---

[2] Unless specifically indicated otherwise, all section references are to Title 11 of the United States Code (the "Bankruptcy Code"). The Federal Rules of Bankruptcy Procedure shall be referred to as the "Bankruptcy Rules" herein.

entered an order adopting the oral ruling and retaining jurisdiction to consider the question of damages under § 303(i) (the "Initial Dismissal Order") (ECF No. 57).

On October 15, 2025, the Petitioning Creditors filed their first motion seeking reconsideration of, *inter alia*, the question of numerosity of creditors. At a hearing held November 12, 2025, the Court granted reconsideration on the limited of question of number of holders of claims against the Debtor as of the Petition Date (and as a result, the required number of petitioning creditors) and vacated the Initial Dismissal Order.[3] An evidentiary hearing on the number of eligible holders of claims was set for December 17, 2025 (the "Reconvened Trial Date").

On October 23, 2025 (more than a week *after* filing their motion for reconsideration) in the Fairfax County Circuit Court (the "State Court") Welch Sixteen and Welch Seventeen filed a garnishment summons (the "Garnishment Summons") to garnishee PNC Bank for the debt owed by the Alleged Debtor. *Garnishment*, *Welch Family Limited Partnership Sixteen v. Black*, No. CL-2025-0016602 (Va. Cir. Ct. Oct. 23, 2025); Ex. DD, ECF No. 81-1. The clerk of the State Court issued the Garnishment Summons to PNC Bank and a writ of fieri facias (the "Writ") against the Alleged Debtor in favor of Welch Sixteen and Welch Seventeen on November 3, 2025. Ex. DD, ECF No. 81-1, at 7; *see* Va. Code Ann. § 8.01-466, *et. seq.* (2025) (Chapter 18. Executions and Other Means of Recovery). The return date for the Garnishment Summons was November 28, 2025; however, the return date for the Writ was February 1, 2026. Notwithstanding the vacatur on November 12, 2025 of the Dismissal Order and reinstatement of the automatic stay, Welch Sixteen and Welch Seventeen did not request to dismiss the Garnishment Summons and Writ until December 24, 2025, after the Reconvened Trial Date. The

---

[3] The Court's previous findings were based on exhibits not admitted to the evidentiary record, and thus, the Court granted reconsideration for the establishment of a full evidentiary record. *Order Granting, in Part, Motion for Reconsideration*, ECF 77.

State Court entered an order of dismissal on December 29, 2025 (the "Garnishment Dismissal Date"). Thus, even if PNC Bank was released from obligations under the Garnishment Summons on either the filing of their answer on November 11, 2025 or the return date of November 28, 2025, the Garnishment Summons Writ remained in place as to the Alleged Debtor until December 29, 2025.

On the Reconvened Trial Date, after consideration of the exhibits and testimony, the Court found that (1) no more than 11 of the creditors holding claims against the Alleged Debtor qualify as holders of eligible claims under § 303(b); and (2) the Writ in favor of Welch Sixteen and Welch Seventeen constituted a voidable transfer under § 549, and thus due to their post-dismissal actions, Welch Sixteen and Welch Seventeen rendered themselves ineligible to qualify as petitioning creditors under § 303(b)(2). *See Order Dismissing Involuntary Petition and Reserving Jurisdiction to Consider Issues Raised Pursuant to 11 U.S.C. § 303(i) and § 362(k)*, ECF No. 87. As a result, no valid petitioning creditors exist, and dismissal of the Involuntary Petition was proper. The competing motions for reconsideration followed shortly thereafter.

## II.    Discussion

The Welch Motion and the Black Motion make separate and distinct arguments. The Welch Motion asks the Court to reevaluate its legal conclusion that the issuance of the Writ in conjunction with the Garnishment Summons constituted a voidable transfer under § 549 rendering Welch Sixteen and Welch Seventeen invalid petitioning creditors under § 303(b)(2). Conversely (and seemingly defensively in the event the Court grants the Welch Motion and reinstates Welch Sixteen and Welch Seventeen as eligible petitioning creditors), the Black Motion seeks to have the Court recount the number of creditors holding eligible claims against the Alleged Debtor as of the Petition Date to reflect no less than 12 (thus requiring three

petitioning creditors). While both motions are subject to the same standard, the Court will address the merits of each in turn.

### A. Reconsideration Standard

Civil Rule 59(e), made applicable herein by Bankruptcy Rule 9023, permits a court to alter or amend matters "properly encompassed in a decision on the merits." *Banister v. Davis*, 590 U.S. 504, 508 (2020); Fed. R. Bankr. P. 9023(b).[4] A court may grant a motion for reconsideration under Civil Rule 23(e) in three primary circumstances: (1) intervening change of controlling law; (2) availability of new evidence; (3) a need to correct a clear error or prevent manifest injustice. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996); *see also Harris v. District of Columbia,* 756 F. Supp. 2d 25, 29 (D.D.C. 2010). A motion for reconsideration is not a "vehicle for presenting theories or arguments that could have been advanced earlier." *Jones v. Bernanke*, 538 F. Supp 2d 53, 60 (D.D.C. 2008) (citing *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993)); *see also Harrison v. Federal Bureau of Prisons*, 681 F. Supp. 2d 76, 84 (D.D.C. 2010). Further, for the court to change its prior position, "new facts or clear errors of law" must compel the court. *Nat'l Ctr. for Mfg. Science v. Dep't of Def.*, 199 F. 3d 507, 511 (D.C. Cir. 2000). Civil Rule 59(e) is not intended to be a tool for parties to relitigate the same matters already determined by the court, nor it is a vehicle to raise arguments or present evidence that could have been presented to the court prior. *See Banister*, 590 U.S. at 508.

### B. The Welch Motion: Eligible Petitioning Creditors

The Welch Motion does not argue that there has been an intervening change of controlling law nor does it argue that new evidence has come available. Instead, the Welch Motion appears to argue that reconsideration is warranted to correct a clear error or prevent

---

[4] Notably, the word "reconsideration" does not appear in Bankruptcy Rule 9023, though motions requesting that a court alter or amend its judgment are frequently and commonly referred to as "motions for reconsideration."

manifest injustice. Specifically, the Welch Motion raises three points of alleged error: (1) that the issuance of the Garnishment Summons and Writ constitute a voidable post-petition transfer as a matter of law; (2) even if there was no value to such lien, it nevertheless was sufficient to support a finding of a post-petition transfer under § 549; and (3) as a result of the post-petition transfer, Welch Sixteen and Welch Seventeen are no longer valid petitioning creditors. Despite the characterization as three issues, the third is necessarily dependent on the other two and does not raise a separate, distinct question of law or fact.

### i. Issuance of the Writ was a Post-Petition Lien

The Petitioning Creditors errantly argue "at no time when this case was active was there a pending and active garnishment lien." ECF No. 88, at 7. In support of that argument, the Welch Motion proffers that PNC Bank returned an answer dated November 11, 2025 stating they held no funds available for garnishment.[5] Thus, the Petitioning Creditors argue, the answer terminated the Garnishment Summons and Writ and the legal impact of their issuance should only be considered through November 11, 2025 (the day prior to the reinstatement of the automatic stay), not the Garnishment Dismissal Date. This argument is not well founded in either fact or law. On December 24, 2025, Welch Sixteen and Welch Seventeen filed a notice of dismissal of the Garnishment Summons and Writ; if they had expired on November 11, 2025, such dismissal would not have been necessary. Even if the evidence as to the submission of an answer by PNC Bank was introduced at the Reconvened Trial Date, submission of an answer by a garnishee solely impacts the garnishee's legal obligations or exposure as the recipient of a garnishment summons—it has no bearing on the judgment debtor (here the Alleged Debtor). *See* Va. Code

---

[5] In his opposition, the Alleged Debtor raises the argument that the response from the garnishee was not in evidence at the hearing and cannot be considered for purposes of reconsideration under Bankruptcy Rule 9023. The Court agrees that the November 11, 2025 letter could not be "newly discovered evidence" sufficient to form a basis for Bankruptcy Rule 9023 relief, however, due to the overlapping nature of many of the issues references it here for completeness purposes.

Ann. § 8.01-516.1 (Garnishment dispositions); *see also* Ex. DD, ECF No. 81-1, at 8 (Instructions to Garnishees). Furthermore, the return date does not automatically terminate the existence of a Garnishment Summons, it merely sets the time by which the garnishee shall file a response to the summons. Va. Code Ann. § 8.01-515.

As to the duration of the Garnishment Summons and Writ as to the Alleged Debtor, § 8.01-478 of the Code of Virginia establishes that a writ of fieri facias may be levied on bank accounts and is effective from the time it is "actually levied by the officer to whom it has been delivered to be executed." The face of the Garnishment Summons and Writ do not make the exact levy date clear but do establish that they were served sometime between November 3, 2025 (the date of delivery to the Sheriff/authorized officer) and November 11, 2025 (the date of the updated answer from PNC Bank). Thus, as to the Alleged Debtor the earliest the Garnishment Summons expired was the return date of November 28, 2025, and the earliest the Writ (the document creating a lien on the Debtor's intangible property including bank accounts) expired was the Garnishment Dismissal Date (December 29, 2025).

The Welch Motion focuses almost exclusively on the Garnishment Summons and the timing, termination, and impact of its service, answer, and return date with minimal discussion, if any, as to the separate legal issuance of the Writ. Notably, the Welch Motion does not argue that the there was a manifest error of law in the Court's finding that the levy of the Writ created an avoidable lien on the Debtor's interest in property. The distinction is material because the Court's determination at the Reconvened Trial Date that a lien was created post-petition in favor of Welch Sixteen and Welch Seventeen was based on the issuance of the Writ, not the Garnishment Summons. The request for issuance of the Writ and subsequent service on PNC Bank created a lien in favor of Welch Sixteen and Welch Seventeen. *See In re Underwood*, No.

18-70168, 2018 Bankr. LEXIS 1573, at *5 (Bankr. W.D. Va. May 30, 2018) (finding that a lien on the debtor's bank account arose upon service of writ of fieri facias and garnishment on financial institution); *Partridge v. Meyer (In re Partridge)*, 263 B.R. 755, 757 (Bankr. E.D. Va. 2001). All funds placed into the account of the judgment debtor at the garnishee between service and return date are subject to the lien and garnishment. *Partridge*, 263 B.R. at 757 (citing Va. Code Ann. § 8.01-501; *In re Jones*, 47 B.R. 786, 789 (Bankr. E.D. Va. 1985)). The lien on all the the Alleged Debtor's bank accounts at PNC Bank existed until the Garnishment Dismissal Date. Thus, the Court finds that the Petitioning Creditors have not met their burden to show that there was any manifest error of law as to the Court's conclusion that the post-petition issuance of the Writ created a lien on the PNC Bank account(s) of the Alleged Debtor. The Welch Motion is denied insofar as it argues there is a need to correct a clear error or prevent manifest injustice regarding the creation and duration of a lien against the Alleged Debtor.

    *ii. De Minimis Value Does Not Modify Character of the Lien*

    Welch alleges that because "there were zero funds in the garnished account, and as zero funds were transferred" the Garnishment Summons and/or Writ could not be a voidable post-petition transfer. ECF No. 88, at 1. This is inconsistent with the testimony and argument on the Reconvened Trial Date, which established that there was possibly $10 in the Alleged Debtor's account during the applicable period. However, whether there was $0 or $10 is not material to the legal question under § 549 regarding a post-petition transfer of property of the estate. The definition of transfer in the Bankruptcy Code clearly includes the creation of a lien. *See* 11 U.S.C. § 101(54)(A) ("The term transfer means — (A) the creation of a lien . . . ."). Nothing in either § 101(54)(A) or § 549 requires the lien to have a minimum value. As established above, it was the creation of the levy via the Writ, not the issuance of the Garnishment Summons, that

created transfer. The issuance and service of the Writ on the garnishee resulted in a post-petition transfer of property, as defined by the Bankruptcy Code, of the Alleged Debtor, avoidable under § 549. *See In re Jones*, 47 B.R. at 789 (underscoring that the writ of fieri facias creates a lien on property). That the Alleged Debtor had a de minimis amount in the account on the date of service does not impact the finding that the Writ itself created an avoidable lien. Therefore, the Welch Motion is denied insofar as it seeks reconsideration on the ground that there is any manifest error of law in the Court's finding that the Writ was a voidable post-petition lien under § 549, notwithstanding the alleged $0 value in the PNC Bank account(s).

   *iii.    Avoidable Post-Petition Lien Excludes Welch Sixteen and Welch Seventeen as Eligible Petitioning Creditors*

   As of the Reconvened Trial Date, Welch Sixteen and Welch Seventeen, as holders of one claim against the Alleged Debtor, were the only remaining petitioning creditor. Thus, because there is only a single petitioning creditor, an involuntary petition against the Alleged Debtor could only be sustained under § 303(b)(2) (requiring only one eligible petitioning creditor).[6] The question then turns on whether the term "such holders" in § 303(b)(2) excludes a transferee of a transfer voidable under § 549 from both the count of claim holders against the debtor and from eligibility to serve as a petitioning creditor. On the Reconvened Trial Date, the Court ruled that the transferee of an avoidable transfer was ineligible to serve as a petitioning creditor based on the limiting language of the mid-sentence phrase in § 303(b)(2). *See* 11 U.S.C. § 303(b)(2) (restricting the term "such holders" to "exclude[e] any employee or insider of such person and

---

[6] Section 303 reads, in relevant part:

   An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

   (b)(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $21,050 of such claims . . . .

11 U.S.C. § 303.

any transferee of a transfer that is voidable under [the Code]"). The Welch Motion argues that the Court's interpretation of the law was wrong, and even if Welch Sixteen and Welch Seventeen were recipients of a voidable post-petition transfer of property, the language of § 303(b)(2) only excludes them from the count of creditors, not from serving as a petitioning creditor.

As pled, the Welch Motion is nothing more than the request for the court to change its mind on the interpretation of the language of § 303(b)(2). Nothing in the Welch Motion raises an issue of law that the Court did not consider on the Reconvened Trial Date. The Court reviewed and acknowledged that there exists a split of authority on the interpretation of the language of § 303(b)(2) but found that the better interpretation was that which excludes a recipient of an avoidable transfer from eligibility as a petitioning creditor. *See, e.g.*, *In re Runway II*, 168 B.R. 193, 196 (Bankr. W.D. Mo. 1994); *In Best Home Performance of CT, LLC*, No. 19-20688, 2019 Bankr. LEXIS 3682, at *28 (Bankr. D. Conn. Dec. 2, 2019) ("Importantly the plain language of 11 U.S.C. § 303(b)(2) indicates that the petitioning creditor cannot be an insider of the alleged debtor.").

Furthermore, the facts of this case are distinguishable from those holding otherwise, specifically because of the deliberate, intentional steps taken post-petition by Welch Sixteen and Welch Seventeen to garnish funds from the Alleged Debtor while they had a pending motion for reconsideration of the initial dismissal of the case. *See In re CorrLine Int'l, LLC*., 516 B.R. 106, 162 (Bankr. S.D. Tex. 2014) (finding that when the petitioning creditor was a 45% percent owner of the debtor—a clear insider—the policy considerations supported the bankruptcy because in that situation a bankrupt company whose creditors consist of owners and other inherent insiders should not be able to skirt their repayment obligations simply because the petitioning creditors are insiders). In addition to the Court's interpretation of the language of §

10

303(b)(2), the policy considerations here support the Court's finding. The Court cannot condone otherwise eligible petitioning creditors taking post-petition, pre-entry of order for relief, actions against an alleged debtor that result in an avoidable transfer, all the while on clear, actual notice of the restrictions of the Bankruptcy Code. In this case, the post-petition pleadings were filed by counsel representing the Petitioning Creditors, apparently in an attempt to take advantage of a loophole period of time while his own motion for reconsideration was pending. Allowing such legal gamesmanship is untenable. Allowing creditors who engage in such activities with blatant disregard for this Court or the rigors of the Bankruptcy Code to remain as eligible petitioning creditors would be against the intentions of § 303 and the Bankruptcy Code. The Welch Motion is denied as it does not establish any basis for the Court to reconsider its ruling as to the eligibility of Welch Sixteen and Welch Seventeen as petitioning creditors as a result of their post-petition actions against the Alleged Debtor.

### C.  The Black Motion: Number of Qualifying Creditors

Based on the above analysis, this case has no valid petitioning creditors. The Court recognizes that if it had reached the opposite conclusion, the number of qualifying creditors would be a material question, and the Black Motion would be ripe for review. However, given the lack of any qualifying petitioning creditors, the total number of "holders of such claims" is moot. Therefore, the Court does not need to address whether the Black Motion adequately establishes grounds for reconsideration nor the merits thereof.

### III.   Conclusion

For the reasons stated herein, the Court finds that the Petitioning Creditors failed to meet their burden under Bankruptcy Rule 9023 to establish that reconsideration of the Dismissal Order is necessary. Because the Court does not reconsider the finding that there are no valid petitioning creditors, the relief requested in the Black Motion is moot and the Court does need not reach its

11

merits.

Therefore, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1.      The Welch Motion (ECF No. 88) is **DENIED.**

2.      The Black Motion (ECF No. 90) is **DENIED** as **MOOT.**

[Signed and dated above.]

Copies to: Recipients of CM/ECF Notices.